UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LUIS B.,

                  Plaintiff,

v.                                                           1:20-CV-1452
                                                             (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | ELIZABETH HAUNGS, ESQ.<br>KENNETH HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | ANDREEA LECHLEITNER, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

The parties consented, in accordance with a Standing Order, to proceed before

the undersigned.  (Dkt. No. 14.)  The court has jurisdiction over this matter pursuant to

42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-

motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the

Commissioner's motion is granted.

**I.    RELEVANT BACKGROUND**

### A.    Factual Background

Plaintiff was born in 1983.  (T. 103.)  He completed the 10th grade.  (T. 48.)

Generally, Plaintiff's alleged disability consists spinal stenosis, high blood pressure,

sleep issues, and migraines.  (T. 244.)  His alleged disability onset date is April 23,

2017.  (T. 103.)

### B.    Procedural History

On March 22, 2018, Plaintiff applied for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act.  (T. 103.)  Plaintiff's application was initially

denied, after which he timely requested a hearing before an Administrative Law Judge

("the ALJ").  On January 9, 2020, Plaintiff appeared before the ALJ, Asad M. Ba-Yunus.

(T. 37-88.)  On February 3, 2020, ALJ Ba-Yunus issued a written decision finding

Plaintiff not disabled under the Social Security Act.  (T. 17-36.)  On August 29, 2020, the

Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's

decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely

sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and

conclusions of law.  (T. 22-32.)  First, the ALJ found Plaintiff had not engaged in

substantial gainful activity since March 22, 2018.  (T. 22.)  Second, the ALJ found

Plaintiff had the severe impairments of: degenerative changes in the cervical spine,

including disc herniations with spinal cord impingement and foraminal stenosis,

degenerative changes in the lumbar spine including bulging discs, narrowing, and mild

foraminal stenosis; hypertension; migraines; obesity; attention deficit hyperactivity

disorder ("ADHD"); specific learning disorder; and substance abuse disorder.  (*Id*.)

Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals

one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T.

22-25.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to

perform light work as defined in 20 C.F.R. § 416.967(b), except:

> [Plaintiff] can occasionally stoop, kneel, crouch, crawl, and climb stairs,
> ramps, ladders, ropes, and scaffolds; [Plaintiff] may occasionally be
> exposed to hazards, such as unprotected heights and dangerous
> machinery; and [Plaintiff] can perform unskilled, simple, routine tasks.

(T. 25.)[1]  Fifth, the ALJ determined Plaintiff unable to perform past relevant work;

however, there were jobs that existed in significant numbers in the national economy

Plaintiff could perform.  (T. 31.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.      Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on

the pleadings.  First, Plaintiff argues the ALJ failed to properly evaluate Listing 1.04:

Disorder of the Spine at step three.  (Dkt. No. 11 at 11-15.)  Second, and lastly, Plaintiff

argues the ALJ's supportability and consistency analysis was insufficient to provide

meaningful review.  (*Id*. at 16-19.)  Plaintiff also filed a reply in which he reiterated his

original arguments.  (Dkt. No. 13.)

### B.      Defendant's Arguments

---

[1]      Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 416.967(b).

In response, Defendant makes two arguments.  First, Defendant argues the ALJ was not required to provide a more detailed explanation for his finding that Plaintiff's back impairment did not meet Listing 1.04.  (Dkt. No. 12 at 7-11.)  Second, and lastly, Defendant argues the ALJ's physical RFC is supported by substantial evidence.  (*Id*. at 11-21.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

4

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there

are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

### A.    Listing 1.04

Plaintiff argues the ALJ's step three conclusion that Plaintiff's cervical spine impairment did not meet Listing 1.04A was contrary to the weight of the objective evidence and Plaintiff meets the Listing criteria.  (Dkt. No. 11 at 11.)[2]  For the reasons outlined below the ALJ's determination that Plaintiff's spinal impairment did not meet Listing 1.04A was proper and supported by substantial evidence in the record.

In general, if an ALJ determines a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii)(d)[3].  The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity.  *Id.* § 416.925(a).  If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience.  *Id.* § 416.920(d).

---

[2]    Plaintiff does not argue his lumbar spinal injury met or equaled a listing.  (Dkt. No. 11 at 11.)  Therefore, for ease of analysis, only evidence relevant to the cervical spine will be discussed.

[3]    Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier Regulations and SSRs.

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a listing.  *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1).  It is plaintiff's burden to "demonstrate that [his] disability [meets] all of the specified medical criteria of [a Listing]."  *Otts v. Comm'r of Soc. Sec.,* 249 F. App'x. 887, 888 (2d Cir. 2007) (internal citations omitted).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan,* 493 U.S. at 530.

Listing § 1.04A for disorders of the spine, is defined in relevant part as:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A[4].

Under the Social Security Administration's policy, to meet Listing 1.04A, a plaintiff must establish the simultaneous presence of all the medical criteria in paragraph A.  80 F.R. 57420; *see Joe N. v. Comm'r of Soc. Sec.*, No. 19-CV-1384S, 2021 WL 4316556, at *4 (W.D.N.Y. Sept. 23, 2021) (citing AR 15-1(4)).  After these criteria are established, a plaintiff "must also show that this level of severity continued, or is expected to continue, for a continuous period of at least 12 months."  80 F.R. 57420.  In other

---

[4]    Effective April 1, 2021 the criteria of Musculoskeletal Listings changed.  *See* POMS DI 34121.013 Musculoskeletal Listings from 09/29/16 to 04/01/21.  Plaintiff's 2018 application and ALJ's 2020 decision were prior to the changes.

words, "when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A." *Id*.

Plaintiff argues the ALJ's step three determination ignored evidence in the record and his step three conclusion merely recited the criteria of the Listing. (Dkt. No. 11 at 13.) Here, the ALJ's written decision, at step three and beyond, provides substantial evidence to support his step three conclusion. Further, Plaintiff fails to meet his burden at step three because his spinal impairment did not simultaneously meet all the criteria of the Listing and did not meet the durational requirement.

At step three, the ALJ concluded Plaintiff's impairment did not meet Listing 1.04. (T. 22.)[5] The ALJ stated there was "no medical evidence establishing that Plaintiff's impairments caused spinal arachnoiditis, lumbar spinal stenosis resulting in pseudoclaudication, or currently results in nerve root compression characterized by neuroanatomic distribution of pain." (*Id*.) Although this is the extent of the ALJ's discussion of Listing 1.04A at step three, "other portions of the ALJ's detailed decision . . . demonstrate that substantial evidence supports" his step three determination and therefore "the ALJ's lack of express rational at step three does not require remand." *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-113 (2d Cir. 2010).

In his step four analysis, the ALJ outlined the objective medical evidence concerning Plaintiff's spinal impairment which supports his step three determination. First, the ALJ summarized MRI imagining of Plaintiff's lumbar and cervical spine from January 2018. (T. 27.) As noted by the ALJ, the MRI of Plaintiff's cervical spine

---

[5]     The ALJ also concluded, and neither party disputes, Plaintiff's impairments did not meet or equal Listing 1.00B2b or 12.05.  (T. 22-23.)

showed: spondylosis at C4-5 through C6-7, a minor disc bulge at C4-5, a disc osteophyte complex and central annular tear at C5-6 with mild cord flattening and central canal and right foraminal stenosis, and a posterolateral disc osteophyte complex and annular tear at C6-7 with moderate flattening of the ventral cord and moderately severe bilateral foraminal stenosis.  (T. 27, 369.)

Next, the ALJ considered notations provided by treating source Edward Simmons, M.D.  (T. 28.)  In January 2018, Dr. Simmons reviewed 2017 MRI studies showing "significant herniations with spinal cord impingement and neural foraminal stenosis noted at C5-6 and C6-7."  (T. 376.)  On exam, Dr. Simmons observed "restrictive" range of motion in Plaintiff's cervical spine; "decreased" power grip strength; decreased power of left thumb extension and left shoulder abduction being grade 4+/5, and normal sensation.  (T. 377.)  Dr. Simmons did not examine reflexes at this exam.  (*Id.*)  Therefore, at this examination Plaintiff's impairment did not meet all of the criteria outlined in Listing 1.04A because this examination failed to show motor loss accompanied by sensory or reflex loss.

In June 2018, Dr. Simmons performed another examination.  (T. 28, 522-524.)  On exam Dr. Simmons observed Plaintiff's cervical spine revealed 40% flexion, 20% extension, and 20% rotation to left and right.  (T. 523.)  Dr. Simmons did not provide any other objective observations; therefore, this examination failed to show all of the required criteria of the Listing.

In June 2018, Plaintiff also underwent a consultative examination.  (T. 505-508.)[6]  On exam, Nikita Dave, M.D., observed Plaintiff's cervical spine showed full flexion,

---

[6]     The record also contains an opinion by non-examining State agency medical consultant, Gary Ehlert, M.D.  Dr. Ehlert reviewed Plaintiff's record and concluded Plaintiff's spinal impairment did not

extension, lateral flexion bilaterally, and full rotatory movement bilaterally. (T. 507.) Dr. Dave observed full range of motion of shoulders, elbows, forearms, and wrists bilaterally. (*Id.*) She observed deep tendon reflexes ("DTRs") were physiologic and equal in upper and lower extremities, no sensory deficits were noted, strength was 5/5 in upper and lower extremities, and grip strength was 5/5. (*Id.*) She also stated no muscle atrophy was evident. (*Id.*) Overall, Dr. Dave's examination did not contain any findings required under the Listing.

The ALJ further considered an August 2018 treatment note by Luke Martinic, a physician's assistant with Dr. Simmons' office. (T. 28.) PA Martinic observed active range of motion of the cervical spine as forward flexion to be about 50% of normal, extension to about 40% of normal, rotation to the left and right about 40% of normal. (T. 652.) PA Martinic observed DTRs of upper and lower extremities were symmetric but diminished at 1+; strength testing of upper and lower extremities was graded at 4+/5; and his sensation was grossly intact. (*Id.*)

The ALJ considered objective observations from 2019 as well. (T. 29.) In April 2019, PA Martinic again examined Plaintiff. (T. 645.) PA Martinic observed normal muscle bulk and tone of the upper and lower extremities; mild deficits in strength testing in shoulders; and DTR symmetric but diminished at 1+. (T. 645.) It was noted Plaintiff was a candidate for surgery; however, Plaintiff found "relief with regular chiropractic adjustments." (T. 646.)

---

meet the criteria of Listing 1.04A. (T. 95.) Dr. Ehlert reviewed Plaintiff's December 2017 examination by his chiropractor, his January 2018 MRIs, his January 2018 examination by Dr. Simmons, and Dr. Dave's examination. (T. 98-99.) Dr. Ehlert opined Plaintiff could perform the exertional demands of light work with occasional postural limitations. (T. 97-98.) The ALJ outlined Dr. Ehlert's opinion and found it "somewhat persuasive." (T. 30.)

To be sure, as outlined by Plaintiff, the record contains evidence that Plaintiff's spinal impairment showed the presence of medical criteria required in paragraph A of Listing 1.04. (Dkt. No. 11 at 14.) However, establishing that Plaintiff's impairment met some of the criteria some of the time is not enough to meet a Listing. Indeed, although PA Martinic's examinations showed the presence of possible Listing level criteria, other examinations failed to contain findings of the required criteria. The "level of severity" required under Listing 1.04A is "only met when *all* of the medical criteria listing in paragraph A are *simultaneously present*." 80 F.R. 57418-02 (emphasis added).

In addition, "the simultaneous presence of all of the medical criteria in paragraph A must continue, or be expected to continue, for a continuous period of at least 12 months." 80 F.D. 57418-02. As outlined above, although evidence in the record showed positive findings on examination, those findings failed to meet the durational requirement. Therefore, Plaintiff failed to establish the simultaneous presence of all the medical criteria in paragraph A, and also failed to show that a level of severity continued, or was expected to continue, for a continuous period of at least twelve months.

Overall, the ALJ properly assessed Plaintiff's spinal impairment at step three. Although the ALJ did not provide a detailed analysis in his step three determination, the ALJ's reasoning for concluding Plaintiff's impairment did not meet Listing 1.04A can be gleaned from the record. A review of the ALJ's written decision and the record provide substantial evidence to support the ALJ's decision that Plaintiff's cervical spine impairment did not meet Listing 1.04A.

**B.      Medical Opinion Evidence**

Plaintiff argues the ALJ erred in finding the three medical opinions of record "somewhat persuasive" without addressing actual objective evidence.  (Dkt. No. 11 at 16-19.)[7]  Plaintiff argues, "[d]espite these opinions differing [significantly] from each other, the ALJ found them all 'somewhat persuasive' in a largely conclusory way without addressing actual objective evidence. This leaves the Court unable to understand why the ALJ found Plaintiff capable of a range of light work despite crediting Dr. Horvath's opinion of greater limitation. This harmful error warrants remand."  (*Id*. at 16.)  For the reasons outlined below, the ALJ properly assessed the medical opinion evidence and his determination was supported by substantial evidence.

Under 20 C.F.R. § 416.920c the ALJ must articulate how he or she considered certain factors in assessing medical opinions.  *See* 20 C.F.R. § 416.920c(a)-(c).  The regulatory factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, and (5) other factors.  *Id*. § 416.920c(c).  An ALJ must explain his or her approach with respect to the first two factors when considering a medical opinion but need not expound on the remaining three.  *Id*. § 416.920c(b).

The record contains medical opinions from Drs. Dave, Elhert, and Horvath.  Dr. Dave opined, based on Plaintiff's physical impairments, there "may be mild limitations for repetitive bending and twisting due to cervical and lumbar spine, lifting, carrying, pushing, pulling, maintaining non-neutral spine positions for too long, and for prolonged standing."  (T. 508.)  Non-examining State agency medical examiner, Dr. Elhert opined

---

[7]     Plaintiff does not assert the ALJ erred in his assessment of the medical opinion evidence regarding Plaintiff's mental impairments, nor does Plaintiff assert the ALJ erred in his mental RFC determination; therefore, for ease of analysis only the relevant evidence in the record will be discussed.

Plaintiff could perform light work; however, he could occasionally: climb; stoop (bend at waist); kneel; crouch (bend at the knees); and crawl.  (T. 97-98.)

Julius Horvath, D.C. completed a "Medical Examination for ADAWD Determination" form on January 3, 2019.  (T. 647-648)[8].  Dr. Horvath indicated Plaintiff was "moderately limited" in his ability to: walk, stand, sit, and climb.  (T. 648.)[9]  He indicated Plaintiff was "very limited" in his ability to: lift, carry, push, pull and bend.  (*Id*.) Lastly, he indicated Plaintiff had no limitations in his ability to see, hear, speak, and use his hands.  (*Id*.)

The ALJ found Dr. Dave's opinion "somewhat persuasive."  (T. 29.)  The ALJ considered Dr. Dave's relationship with Plaintiff noting Dr. Dave only examined Plaintiff once.  (*Id*.); 20 C.F.R. § 416.920c(c)(1),(3).  The ALJ then concluded her opined limitations were supported by her clinical observations and "largely consistent" with the medical evidence.  (*Id*.); 20 C.F.R. § 416.920c(c)(1),(2).  The ALJ further noted Plaintiff's presentation at the consultative examination was "noticeably different than the physical findings" of Plaintiff's treating providers.  (*Id*.); 20 C.F.R. § 416.920c(c)(2).  The ALJ therefore concluded Dr. Dave's limitations provided "some support" for a light exertional capacity.  (*Id*.)

The ALJ found Dr. Ehlert's opinion "somewhat persuasive."  (T. 30.)  The ALJ considered the doctor based his opinion on a review of Plaintiff's file.  (T. 30); 20 C.F.R. § 416.920c(c)(1),(3).  The ALJ concluded the doctor's findings were "somewhat

---

[8]      Abled Bodied Adults without Dependents ("ABAWD").  Supplemental Nutrition Assistance Program, https://www.fns.usda.gov/snap/work-requirements.

[9]      The form presented three options: no evidence of limitations, moderately limited, and very limited.  (T. 648.)

consistent" with medical evidence concerning Plaintiff's physical impairments.  (T. 30.);

20 C.F.R. § 416.927c(c)(2).

Lastly, the ALJ found Dr. Horvath's opinion "somewhat persuasive."  (T. 30.)  The

ALJ noted that as a chiropractor Dr. Horvath was not an acceptable medical source;

however, he was a treating source.  (T. 30); 20 C.F.R. § 416.920c(c)(3).  The ALJ

concluded his findings were "somewhat consistent" with the medical and opinion

evidence in the record.  (T. 30); 20 C.F.R. § 416.920c(c)(2).  Overall, the ALJ concluded

the RFC for a reduced range of light work was consistent with three opinions and

additional evidence in the record including Plaintiff's statements and objective medical

evidence.  (*Id*.)

Plaintiff essentially argues the ALJ found all of the opinions "somewhat

persuasive" for generally the same reasons; however, this was error because Dr.

Horvath's opinion conflicts with the demands of light work and therefore the ALJ's

analysis of the opinion evidence was inadequate and frustrates meaningful review.

(Dkt. No. 11 at 16-19.)  Here, the ALJ specifically found each opinion "somewhat

persuasive" and articulated his reasoning to support his conclusion, as outlined above.

(T. 29-30.)  The ALJ did not err in concluding the opinions in the record were all

"somewhat persuasive."  Nothing in the regulations require an ALJ to find one opinion

more persuasive than another.  Indeed, under 20 C.F.R. § 416.920c(a), an ALJ "will not

defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s)."

Further, an ALJ's RFC finding need not "perfectly correspond with any of the

opinions of medical sources," since the ALJ is "entitled to weigh all of the evidence

available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  The ALJ's RFC for a reduced range of light work was supported by the record as a whole, and not inherently inconsistent with Dr. Horvath's opinion.

Although Plaintiff argues Dr. Horvath's opinion is inconsistent with light work, the ALJ considered the record as a whole in formulating the RFC and his determination is supported by substantial evidence, including Dr. Horvath's opined limitations.  The ALJ considered Dr. Horvath's opinion that Plaintiff was "very limited" in lifting and carrying and together with other evidence in the record, ultimately limited Plaintiff to light work. 20 C.F.R. § 416.967(b)(light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds).  In addition, the ALJ incorporated Dr. Horvath's opinion Plaintiff was "very limited" in bending and squatting by restricting him to work that required only occasional postural activities.  (T. 25.) Although Plaintiff may have interpreted Dr. Hovarth's opinion differently, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

In addition to Dr. Horvath's opinion, the ALJ's RFC for a reduced range of light work was supported by the other medical opinion evidence in the record, as well as objective medical evidence and Plaintiff's activities of daily living.  Dr. Dave's opinion that Plaintiff had "mild limitations" is consistent with the demands of light work.  (T. 508.) Indeed, the Second Circuit, as well as its district courts, have found that up-to-moderate restrictions are consistent with an ability to do light work. *See White v. Berryhill*, 753 F. App'x 80 (2d Cir. 2019) (finding that consultative examiner's assessment of moderate

limitations supported a modified light RFC); *Tankisi v. Comm'r of Soc. Sec.*, 521 F.

App'x 29, 34 (2d Cir. 2013) (rejecting plaintiff's argument that the consultative

examiner's opinion was "incomplete and vague" and affirming RFC for light work with

occasional climbing balancing, stooping, kneeling, crouching, and crawling, where the

consultative examiner opined that plaintiff had a "mild to moderate limitation for sitting

for a long time, standing for a long time, walking for a long distance, pushing, pulling, or

heavy lifting.").  Further, the RFC for light work is supported by Dr. Ehlert's opinion that

Plaintiff could perform light work with postural limitations.  (T. 529.)

The ALJ's RFC was also supported by Plaintiff's reported activities of daily living.

*See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5 (2d Cir. 2017) (holding that the ALJ

could rely on activities of daily living to formulate the RFC)*; see Cichocki v. Astrue*, 729

F.3d 172, 178 (2d Cir. 2013) (holding that the ALJ properly considered the claimant's

reported daily activities, such as walking her dog and cleaning her house, in support of

an RFC finding for light work).  Plaintiff indicated he cooked, cleaned, did laundry

shopped, took care of his personal grooming needs, and used public transportation.  (T.

26-27; 260-262.)  He also took walks for relaxation, played video games, and went

swimming.  (T. 263, 600.)  He could walk for up to a mile and went fishing, which he

found "therapeutic."  (T. 26, 264, 535.)  He went to church every Sunday.  (T. 263, 539.)

Plaintiff's ability to do routine daily activities further supports an RFC for light work.

Therefore, the ALJ properly relied on the medical opinion evidence in the record and

Plaintiff's activities in formulating the physical RFC.

Overall, the ALJ has the duty to evaluate conflicts in the evidence.  *Monroe v.*

*Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical

evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).  Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).  As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision.  *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).  As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

**ACCORDINGLY**, it is

ORDERED that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **<u>DENIED</u>**; and it is further

ORDERED that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **<u>GRANTED</u>**; and it is further

ORDERED that Defendant's unfavorable determination is **<u>AFFIRMED</u>**; and it is further

ORDERED that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated:        January 28, 2022

_____
William B. Mitchell Carter
U.S. Magistrate Judge